# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| BELOTECA, INC., | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 19 CV 00360 |
| APICORE US LLC and MYLAN INSTITUTIONAL LLC, | ) ) ) ) | Judge John J. Tharp, Jr. |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Beloteca, Inc. filed a complaint against Apicore US LLC and Mylan Institutional LLC seeking a declaratory judgment of patent noninfringement. Defendants moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(2) for lack of subject matter and personal jurisdiction or to transfer the case to the Eastern District of Texas. These motions have nothing to do with the merits of the lawsuit and everything to do with efforts by the defendants—neither of which have any ties to the Eastern District of Texas—to litigate in a forum they favor. That said, the Court is compelled by existing Federal Circuit precedent to conclude that Beloteca, in its own effort to preclude the defendants from filing suit in their favored forum, jumped the gun and filed this lawsuit before an actual controversy between the parties matured to the point that this Court could exercise subject matter jurisdiction. Accordingly, the defendants motion to dismiss is granted and this case is dismissed for want of subject matter jurisdiction.

## BACKGROUND

Defendant Apicore LLC, a pharmaceutical limited liability company formed in Delaware with its sole place of business in New Jersey, owns three patents relating to "a novel process for manufacturing ISB" resulting in compositions of high purity isosulfan blue products. Compl. ¶¶ 4,

8-10; Defendants' Memorandum in Support of Motion to Dismiss 2-3, ECF No. 30. Isosulfan blue products are used in medical imaging procedures to test how well the lymphatic system is working in certain parts of the body. The product works by staining the lymph nodes and lymph vessels with blue dye. Compl. ¶ 2. Defendant Mylan LLC, located in Illinois, is the exclusive licensee of those patents. *Id.* at ¶ 11.

Plaintiff Beloteca Inc., a California corporation with its principal place of business in California, intends to enter the isosulfan blue market. On January 16, 2019, the FDA approved Beloteca's Abbreviated New Drug Application ("ANDA") for a 1% isosulfan blue product. *Id.* at ¶ 27. Fearing that Apicore and Mylan would file a patent infringement lawsuit once it learned that its application was approved, Beloteca filed a declaratory judgment action in this district on January 17, 2019 seeking to establish noninfringement.

Upon learning of the suit, Apicore and Mylan informed Beloteca that they considered Beloteca's intent to sell ISB products an infringement and threatened to pursue some unidentified form of emergency judicial relief unless Beloteca refrained from launching its product. Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss Ex. A, ECF No. 36. After some six weeks of negotiations, which included agreed exchanges of documents relating to Beloteca's ANDA, Apicore and Mylan filed a new action against Beloteca in the Eastern District of Texas seeking a declaration of infringement and moving for an emergency temporary restraining order. *See* Plaintiff's Motion to Expedite the Determination of Jurisdiction Ex. A, ECF No. 27. Apicore and Mylan then moved to dismiss the complaint Beloteca filed in this district for lack of subject matter and personal jurisdiction and/or to transfer that complaint to the Eastern District of Texas. At a subsequent hearing, the Court permitted the parties to engage in limited jurisdictional discovery and agreed to address the jurisdictional issues on an expedited basis.

# DISCUSSION

## I. Subject Matter Jurisdiction

The Declaratory Judgment Act, 28 U.S.C. § 2201, permits a potential defendant to file suit against a potential plaintiff to determine its rights and liabilities before it is sued. The Act, however, is not a grant of subject-matter jurisdiction; declaratory judgment actions are authorized only where there is an "actual controversy" between the parties. *NewPage Wisconsin Sys. Inc. v. United Steel, Paper & Forestry, Rubber, Mfg., Energy Allied Indus. & Serv. Workers Int'l Union, AFL-CIO/CLC*, 651 F.3d 775, 776 (7th Cir. 2011). "The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests." *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240-41 (1937). Importantly, courts analyze jurisdiction based on the facts existing at the time the case is brought. *Sierra Applied Scis., Inc. v. Advanced Energy Indus., Inc.*, 363 F.3d 1361, 1373 (Fed. Cir. 2004).

In asserting that there was an actual controversy when it filed the complaint, Beloteca relies on *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007). That case stands for the proposition that a party need not risk liability for infringement in order to obtain a declaratory judgment for non-infringement. *See id.* at 133 ("The rule that a plaintiff must . . . risk treble damages . . . before seeking a declaration of its actively contested legal rights finds no support in Article III."). But that is not the question here. Here, the question is whether there was an adequate basis to infer such a risk, and *MedImmune* says little about that. That is because the declaratory judgment plaintiff in that case had received a letter threatening suit before it filed its complaint. *Id.* at 122. Here, by contrast, Apicore and Mylan state that they had never even heard of Beloteca when Beloteca filed suit, much less threatened it with anything. Defendants' Memorandum in Support of Motion to Dismiss at 16. Their course of conduct bears this out, as Apicore and Mylan did not immediately file suit against Beloteca. Instead, they initiated discussions for the purpose of

evaluating Beloteca's ANDA and ISB product launch and filed an infringement action only after negotiations failed.

The remainder of Beloteca's argument rests almost exclusively on its allegation that the defendants previously filed an infringement suit against another manufacturer of an ISB product. *See* Compl. ¶ 30 (explaining that the defendants enforced their patents against an unrelated drug company in 2016 after that company obtained approval of an ANDA). But the fact that a patent holder previously sued the manufacturer of another ISB product says nothing, in and of itself, about whether it would sue Beloteca. Beloteca's complaint provides no information about the manner in which the other product infringed the defendants' patents or any facts concerning its own manufacturing process. Indeed, it is asserting a claim of non-infringement, so its complaint provides little reason to infer that the defendants would inevitably respond by suing for infringement.

In support of its argument, Beloteca points to *Micron Technology, Inc. v. Mosaid Technologies, Inc.*, 518 F.3d 897 (Fed. Cir. 2008), which does provide some support. There, the Federal Circuit concluded that an actual controversy existed because, among other things, Mosaid (the patent holder) had sued other manufacturers for patent infringement in the past. *Id.* at 901. *Micron* is distinguishable, however, because there was substantially more evidence of intent to enforce the patents in question against the declaratory judgment plaintiff in that case than there is here—Mosaid, for example, had publicized its intent to continue an aggressive litigation strategy and had sent several threatening letters to Micron directly. *Id.* To that point, the Federal Circuit has explicitly rejected the argument that patent litigation history, standing alone, is sufficient to give rise to an actual controversy. *See Innovative Therapies, Inc. v. Kinetic Concepts, Inc.,* 599 F.3d 1377, 1382 (Fed. Cir. 2010) ("[W]hile prior litigation is a circumstance to be considered in

assessing the totality of circumstances, the fact that [the patent holder] had filed infringement suits against other parties for other products does not, in the absence of any act directed toward [the declaratory judgment plaintiff], meet the minimum standard discussed in *MedImmune*."). Beloteca argues that *Innovative Therapies* is distinguishable, but that is true only in the sense that the facts presented there were significantly stronger than Beloteca has marshaled here.

All this said, it is of course indisputable that there is now an actual controversy between the parties. As such, this Court would have subject matter jurisdiction were the complaint brought today. But it wasn't. And, as explained, jurisdiction must be measured from the state of affairs at the time the complaint was filed. *Sierra Applied Scis., Inc.*, 363 F.3d at 1373. At that point, there was not an actual controversy, so Beloteca jumped the gun by filing a declaratory judgment action in this Court before ascertaining the views of Apicore and Mylan as to Beloteca's claims of non-infringement. Accordingly, the Court is compelled to dismiss this action without prejudice.

Apicore and Mylan maintain that the Court should not dismiss this action but rather transfer it to the Eastern District of Texas. They cite *In re LimitNone, LLC*, 551 F.3d 572 (7th Cir. 2008) in support. But in that case, the Seventh Circuit merely held that it generally is not ***necessary*** for a district court to determine that it has subject matter jurisdiction before transferring a case to another district. That is not the same as saying that a court that has determined that it lacks subject matter jurisdiction may nevertheless transfer that case to another federal district court, particularly where the ground of its decision is that no federal court would have subject matter jurisdiction over the action to be transferred. How the Eastern District of Texas could exercise subject matter jurisdiction over Beloteca's premature complaint, after this Court has held that the complaint was filed at a time when there was no actual controversy between the parties, the defendants do not explain.

5

The Court similarly declines to transfer the action because there appears to be a substantial question as to whether the Eastern District of Texas can exercise personal jurisdiction over Beloteca. That is an issue pending in the litigation Mylan and Apicore initiated in the Eastern District of Texas, however, and one more appropriately addressed by that Court.

The question of personal jurisdiction over the defendants in this Court, however, is another matter. Strictly speaking, the Court could also decline to address the question of personal jurisdiction over the defendants given the absence of subject matter jurisdiction. But the parties have briefed that issue fully, and in the interests of judicial economy, it makes sense to address the question now rather than to await a refiling of Beloteca's complaint.

## II. Personal Jurisdiction

Defendants argue that the Court lacks personal jurisdiction over Apicore, a necessary and indispensable party to this litigation.[1] The Court disagrees. To survive a motion to dismiss where, as here, the Court relies on the submission of written materials without conducting an evidentiary hearing, the plaintiff need only establish a prima facie case of personal jurisdiction. *See Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). In ruling on the motion, the Court must accept the uncontroverted allegations in the complaint as true and resolve any factual conflicts in the affidavits in favor of Beloteca. *Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003).

In order for a court to exercise personal jurisdiction, the defendant must have "certain minimum contacts with [the forum State] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Bristol-Myers Squibb Co. v. Superior Court*

---

[1] There is no dispute that this Court can exercise personal jurisdiction over defendant Mylan, which is domiciled in Illinois.

*of California, San Francisco County*, 137 S. Ct. 1773, 1785 (2017) (internal citations omitted). As relevant here, the "minimum contacts" requirement is satisfied if the defendant purposefully directed its conduct at the forum state and the plaintiff's claim arises out of or relates to that conduct. *Maxchief Investments Ltd. v. Wok & Pan, Ind., Inc.*, 909 F.3d 1134, 1138 (Fed. Cir. 2018).[2] The parties agree that, in actions seeking a declaration of noninfringement, the "relevant inquiry" is whether the defendant patent holder purposefully directed enforcement activities at the forum state and whether the declaratory judgment claim "arises out of or relates" to those activities. *Avocent Huntsville Corp. v. Aten Int'l Co., Ltd.*, 552 F.3d 1324, 1332 (Fed. Cir. 2008).

Apricore maintains, and Beloteca does not dispute, that Apricore has taken no actions to enforce the patents in Illinois. But Beloteca argues that Apricore's exclusive licensing agreement with Mylan, an Illinois citizen, subjects Apricore to specific personal jurisdiction in Illinois. The Federal Circuit has held that "the grant of an exclusive license to a licensee that resides or regularly does business in the forum" may be sufficient to establish the minimum contacts required for personal jurisdiction over the patent holder if the agreement "imposes an obligation on the patent holder to enforce or defend the patent on behalf of the licensee . . . ." *New World Int'l, Inc. v. Ford Glob. Techs.*, LLC, 859 F.3d 1032, 1038 (Fed. Cir. 2017).

Here, the 2016 amendment to the licensing agreement between Apricore and Mylan states, in relevant part, that:

- Apricore hereby grants to Mylan . . . a right to enforce the Licensed Patents by initiating an Enforcement Action.

- In any Enforcement Action initiated by a Party against any third party . . . the Parties each have the right to join, if not already joined by the initiating Party. During the Term, each

---

[2] This type of personal jurisdiction is "specific," *i.e.* linked to the case at bar. While personal jurisdiction may also be "general," *i.e.* all purpose, Beloteca does not maintain that the exercise of such jurisdiction would be proper here.

- Party shall provide reasonable assistance to the other Party with respect to any Enforcement Action . . . .

- A Party shall in good faith consider joining any future Enforcement Action at the request of the other Party. If Apicore refuses any request by Mylan to join a future Enforcement Action, Apicore shall provide Mylan with notice of its good faith bases for refusing to join.

- In any joint Enforcement Action, decisions regarding litigation strategy shall be made jointly between Apicore and Mylan to the extent possible; provided that, in the event of a disagreement, Mylan shall be able to make the final determination.

- In any joint Enforcement Action, Mylan and Apicore may select their own independent counsel, or agree to be represented jointly by the same counsel

- [T]he Parties have a common interest in enforcing those patents during the Term of this Agreement.

Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss at Ex. E 2-5.

Beloteca concedes in its response brief that the licensing agreement between Mylan and Apicore gave Apicore "the right (but not the obligation) to sue infringers." It maintains, however, that case law establishes that it is enough to show that the license agreement creates an ongoing relationship to enforce and defend the patents. In support of this proposition, Beloteca relies primarily on *Breckenridge Pharmaceutical, Inc. v. Metabolite Laboratories, Inc.*, 444 F.3d 1356 (Fed. Cir. 2006). There, personal jurisdiction over a patent holder was proper because its exclusive license agreement with a company that conducted business in the forum state granted that licensee significant rights regarding enforcement. It also required the parties to "discuss in good faith the appropriate action, if any, with respect to third party infringers of the Licensed Patents, and to cooperate reasonably in any enforcement actions." *Id.* at 1366-67. The court noted that the agreement not only contemplated an ongoing relationship between the parties, but had actually resulted in such a relationship, as evidenced by joint enforcement actions initiated by the parties in the forum state and elsewhere. *Id.* at 1367. Beloteca also points to several other cases where the Federal Circuit has upheld the exercise of personal jurisdiction over patent holders at least in part

because of their licensing agreements with companies located in the forum state. *See Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1361 (Fed. Cir. 2001) (personal jurisdiction where patent holder's negotiation efforts with the plaintiff, a resident of the forum state, culminated in four license agreements); *Dainippon Screen Manufacturing. Co., Ltd. v. CFMT, Inc*., 142 F.3d 1266, 1270 n.1 (Fed. Cir. 1998) (personal jurisdiction where patent holder had right but not obligation to take appropriate legal action in cases of possible infringement actions detected by licensee); *Genetic Implant Sys., Inc. v. Core-Vent Corp.*, 123 F.3d 1455, 1459 (Fed. Cir. 1997) (personal jurisdiction where patent holder retained right to pursue claims for infringement and agreed to indemnify licensee for liability arising from third party patent infringement actions); *Akro Corp. v. Luker*, 45 F.3d 1541, 1546 (Fed. Cir. 1995) (personal jurisdiction where licensing agreement created continuing obligations between patent holder and licensee).

Apicore argues that these cases are distinguishable because the defendants had taken some type of enforcement action, such as sending cease and desist letters, but its fundamental position rests on its characterization of *New World* as holding that the text of the license agreement must impose an unqualified obligation to enforce the patent in order to provide a sufficient basis to exert personal jurisdiction over the patent holder. In fact, however, the Federal Circuit in *New World* acknowledged that the agreement need not remove all discretion from the patent holder and that restrictions that require the exercise of good faith impose meaningful obligations on the patent holder, particularly where there is additional evidence that the contractual obligations have been implemented by the parties in a manner consistent with an agreement to jointly enforce the patents. 859 F.3d at 1039.

This is a stronger case for personal jurisdiction than *New World* on both counts. As to text, under the agreement in *New World*, the patent holder retained "nearly complete control over the

patent enforcement decisions." *Id.* at 1043. There, the licensee could not initiate suit without the patent holder's affirmative authorization, and the patent holder had the authority to exclude the licensee from the suit if it had a reasonable basis to do so. Similarly, it was not obligated to join such a suit even if it authorized the licensee to pursue one. Further, the patent holder had the discretion to determine not only whether, but how, to pursue enforcement of the patents. The patent holder also retained total discretion of whether and how to pursue enforcement in the absence of a request to do so by the licensee. And while the agreement required the licensee to cooperate with the patent holder, it imposed no reciprocal obligation to cooperate on the patent holder.

Here, by contrast, Apicore's discretion is more cabined. It has no right under the agreement to restrain or control Mylan's ability to initiate or participate in an enforcement action and it is required to assist with any enforcement actions that Mylan pursues. And while Apicore retains the right not to join a suit initiated by Mylan, it can only do so by providing Mylan with a good faith basis for declining to do so. Further, in marked contrast to the agreement in *New World*, in which the patent holder retained the right to control the course of enforcement proceedings, in the licensing agreement here Apicore surrenders that control and discretion by ceding the final determination as to "decisions regarding litigation strategy" to Mylan. Finally, the licensing agreement here states expressly that Apicore and Mylan share a common interest in enforcing the patents.

If there were any doubt that the licensing agreement contemplated joint patent enforcement, the actions Apicore and Mylan have actually taken to enforce the patents-in-suit should put it to rest. In *New World*, the patent holder had largely acted unilaterally in enforcing the patents by sending cease and desist letters and ultimately initiating suit. But here, the evidence compares favorably with the evidence the Federal Circuit relied on in *Breckenridge*. Indeed, so far as the

record reflects, the patent enforcement and defense efforts with respect to the patents-in-suit have been entirely joint. Both the patent holder and the licensee are represented by the same counsel; the communications relating to the dispute between the parties have been made on behalf of both Apicore and Mylan, and the companies have jointly sued to enforce the patents in an unrelated suit. These are precisely the types of additional factors that the *Breckenridge* court relied on in concluding that personal jurisdiction existed over the patent holder.

At bottom, it bears reminding that the question of specific personal jurisdiction rests on two requirements: that a defendant has its own contacts with the forum and that the claims in the case arise from or relate to those contacts. There is no question here that Apicore has sufficient contacts with Illinois to support the exercise of specific personal jurisdiction by virtue of its exclusive licensing agreement with Mylan. And the Court has no difficulty concluding that the claim in this case arises from and relates to that agreement because that agreement clearly anticipates, and the defendants' efforts confirm, that Apicore and Mylan will pursue their common interest in enforcing the patents against a claim of non-infringement such as Beloteca has advanced. And, finally, there is nothing unfair about holding Apicore to answer to infringement claims in Illinois. Although it may have been surprised to learn of Beloteca and its ANDA specifically, Apicore cannot credibly claim surprise that it has been sued in Illinois, given its execution of an exclusive licensing agreement that pledges cooperation with Mylan, an Illinois corporation, in enforcing these patents.

\*     \*     \*

While the Court may properly exercise personal jurisdiction over Apicore, it lacked subject matter jurisdiction over Beloteca's declaratory judgment action at the time the complaint was filed, so the action must be dismissed. The dismissal, however, is without prejudice to Beloteca's claims

11

and without prejudice to its ability to refile its claims in this District (or in any other, for that matter). Before Beloteca refiles its claims in a new case, however, it should give due consideration to the efficacy of doing so if it is determined by the Court in the Eastern District of Texas that Apicore and Mylan are able to go forward against Beloteca in that jurisdiction. Continued tactical maneuvering is unwarranted; whether this case goes forward in Texas or Illinois, the parties will get a fair hearing.

Dated: April 8, 2019

John J. Tharp, Jr.
United States District Judge